21579.    EAST *et al.* v. MAYOR &c. OF
WRIGHTSVILLE *et al.*

ARGUED MARCH 12, 1962—DECIDED MAY 14, 1962.

*Paul J. Jones, Jr., Jones & Douglas,* for plaintiffs in error.
*Emory L. Rowland, Joe W. Rowland,* contra.

GRICE, Justice. Whether a certain area had become a public alley brought about litigation resulting in the assignments of error here. The Mayor & Council of Wrightsville, J. M. Cook, Sr., Mrs. Sarah L. Thompson and Mrs. Cordelia H. Tucker filed their petition in the Superior Court of Johnson County, Georgia, against George East and Mrs. L. A. Lovett, charging that, by constructing a parking lot on property which included a public alley of the City of Wrightsville, the defendants were trespassing and encroaching upon a public alley, and seeking injunctive relief.

The area in question appears on a plat attached to the petition and is designated as "alley number one." As shown, this alley fronts on West Elm Street and intersects with another area, designated as "alley number two," which, in turn, intersects with what is referred to as "alley number three," likewise shown on the plat. The property of each of the plaintiffs Tucker, Cook, and Thompson either abuts or fronts on these alleged connecting alleys.

The petition as finally amended alleged that: The area in dispute, "alley number one," is the same referred to in the covenant in a recorded deed from B. B. Tanner to E. A. Lovett, dated December 10, 1912, a copy of which is attached to the petition. That covenant provides that "The alley west of lands of E. E. Daley is not to be closed without the consent of both the said B. B. Tanner and the said E. A. Lovett." At the time of the execution of this deed the alley described therein was used as a way from West Elm Street to the gates of a barn, and was also used as a means of ingress and egress from that street to the rear of the property conveyed by the deed. For at least 40 years· the general public had used all three of the alleys "publicly, continuously, exclusively, uninterrupted, and peaceably, and without the permission of anyone, by riding over same in buggies, motor vehicles of all descriptions, wagons, bycicles [sic], and by walking over same." The plaintiff Mayor & Council of Wrightsville had "used same during said period of time as an access to the rear of various store buildings [set

out specifically in a prior paragraph of the petition], containing various types of businesses, for its trash and garbage trucks to collect trash and garbage put out the rear of said buildings." During such 40 years the city government had "on numerous occasions and without the request of or permission of anyone, worked and repaired said alleys heretofore described in order to keep them fit for use by the general public . . . has filled in holes in said alleys, surfaced them with clay, leveled them and done other acts to keep them fit for use by the general public"; and "by reason of the aforesaid facts the alleys, being alleys No. One, Two and Three, have been and are public alleys."

When the defendants made excavations in "alley number one" and paved it, the plaintiff Mayor and Council of Wrightsville was maintaining it and considering it to be a public alley, and although this matter had previously been discussed between the plaintiff city and the defendants, the latter excavated and paved this alley without securing permission from the plaintiff city. Such excavation and paving constitute continuing acts of trespass on such alley, making it impassable and impossible to use by the general public. The defendants have threatened to and have manifested their intention to continue trespassing on this alley and thus to prevent its use by the general public.

The plaintiffs also charged that it is necessary to enjoin the defendants from so using "alley number one" in order to avoid a multiplicity of suits. This alley is the only means of ingress and egress for city garbage and fire trucks to the rear of nine business establishments which abut on this alley and it is the city's duty to furnish those businesses with adequate fire protection and garbage collection, but the city is seriously hampered in doing so because of such trespass on this alley and further threatened trespasses.

Each of the three individual plaintiffs alleged that, by reason of the defendants' trespasses on such alley, prohibiting ingress and egress as aforesaid, his business has been damaged in specified particulars; that he has never given his consent for anyone to interfere or encroach on such alley; and that his

injuries are continuing and irreparable and he has no adequate remedy at law.

Besides temporary restraint and other relief, the plaintiffs prayed that the defendants be permanently enjoined from trespassing on this alley for the purpose of preparing it or using it for a portion of a parking lot, and that they have general relief.

To this amended petition the defendants interposed an answer denying that the disputed area, "alley number one," was a public alley and stating: ". . . at irregular intervals and by various and irregular routes, various occupants of the land lying immediately east of said described land of the defendants have crossed said land of the defendants, but all of such use of the land has been permissive, and at no time has the public or any private individual used any fixed and definite way across the defendants' said land or under claim of right or under any claim adverse to the defendants or their predecessors in title to said land." The defendants also filed general and special demurrers, all of which were overruled. Upon trial the jury returned a verdict in favor of the plaintiffs, and subsequently the trial court denied the defendants' motion for judgment notwithstanding such verdict and their motion for new trial upon general and special grounds. Error is assigned upon the overruling of the defendants' demurrers, denial of their motions for judgment notwithstanding the verdict and for new trial; and error is also assigned specially on that portion of the final judgment which decreed that the area in question was a public alley and generally to the final judgment, which permanently enjoined the defendants from using the alley as a parking lot.

We will consider those assignments of error in the order recited above.

■ (a) The special demurrers, not having been insisted upon in this court, are thus abandoned.

(b) Having considered the allegations of this petition as against general demurrer we conclude that it effectively pleads a dedication of private property for public use and, therefore, sets forth a cause of action for the relief sought.

The allegations come within the terms of *Code* § 85-410, which declares: "If the owner of lands, either expressly or by his acts,

shall dedicate the same to public use, and the same shall be so used for such a length of time that the public accommodation or private rights might be materially affected by an interruption of the enjoyment, he may not afterwards appropriate it to private purposes."

In this connection, the amended petition alleged as follows:

"7. (a) For a period of at least forty years the general public has used the aforesaid alleys publicly, continuously, exclusively, uninterrupted, and peaceably, and without the permission of anyone, by riding over the same in buggies, motor vehicles of all descriptions, wagons, bicycles, and by walking over same. Plaintiff Mayor and Council of Wrightsville have used same during said period of time as an access to the rear of various store buildings, being the same buildings set out in paragraph 14 hereof [nine named business establishments], containing various types of businesses, for its trash and garbage trucks to collect trash and garbage put out the rear of said buildings.

"8. During said period of at least forty years plaintiff Mayor & Council of Wrightsville has, on numerous occasions and without the request of or permission of anyone, worked and repaired said alleys heretofore described in order to keep them fit for use by the general public. Said plaintiff has filled in holes in said alleys, surfaced them with clay, leveled them and done other acts to keep them fit for use by the general public.

"9. By reason of the aforesaid facts the alleys, being alleys No. One, Two and Three, have been and are public alleys."

The foregoing allegations follow a paragraph (6) which recites that the area in question, "alley number one," is the alley referred to in a covenant in a deed from B. B. Tanner to E. A. Lovett. That covenant provided that such alley "is not to be closed without the consent of both" Tanner and Lovett. The defendants are successors in title to Lovett.

The plaintiffs thus contend that this area in question, "alley number one," originated as a permissive private way across the property now owned by the defendants, but that it subsequently became a public alley.

The defendants take the position that because of this permissive origin no dedication as a public alley could then or

later come about. They contend that the reservation, by the parties to the 1912 deed, of the right to close the area prohibited any implied dedication. They also insist that such original permissive use prevented later acquisition of any right of user by prescription.

What Tanner and Lovett convenanted in their 1912 deed could not perpetuate the status quo of this area.

That covenant could not prohibit later dedication of the area to public use. Dedication of land to public use and the acceptance of such dedication may occur in different ways, one of which is by implication. "Intention to dedicate may be inferred from acquiescence by the owner in the use of his land by the public, if the use be of such character as to clearly indicate that the public accepted the dedication to the public use." *City of LaFayette v. Walker County*, 151 Ga. 786 (1) (198 SE 218). "And acceptance of property set aside by the owner to a public use will be implied where it is improved and maintained for such use by authorized public officials out of tax funds." *Lowry v. Rosenfeld*, 213 Ga. 60, 63 (96 SE2d 581). See also *Hyde v. Chappell*, 194 Ga. 536 (22 SE2d 313).

The facts of the instant case fit, in principle, those of *Carlisle v. Wilson*, 110 Ga. 860 (36 SE 54), in which this court, one Justice absent, held: "A passage-way connecting a city lot with a public street, although originally laid out as a private way, became a public street by the continuous use thereof by the public as such for thirty years, and by having been kept in repair and free from obstructions by the municipal authorities."

The allegations of the case at bar thus plead an implied dedication.

Prescriptive right to use of the area in dispute is also alleged by the plaintiffs. However, since under our ruling as to implied dedication, the petition was not subject to general demurrer, we do not need to decide whether the petition also pleaded a cause of action for prescription.

■ ■ Upon the trial plaintiffs' evidence supported their amended petition, while the evidence of the defendants supported their answer. Therefore, the evidence, while conflicting, was sufficient for the jury's consideration. Accordingly, it was

not error to deny the defendants' motion for judgment notwithstanding the verdict and motion for new trial based upon the general grounds.

■ We come now to the special grounds of plaintiffs' motion for new trial.

(a) Special ground 1 complains that the following charge was erroneous and injurious: "I charge you that the right of a private way over another's land may arise from an expressed [sic] grant or from prescription by seven years uninterrupted use through improved land or twenty years use over wild land, or by implication of law when such is necessary for the enjoyment of the land granted by the same owner." The criticism made of this excerpt from the charge is threefold: that it was not applicable to the issues made by the pleadings and evidence; that it conflicted with another specified portion of the charge; and that it was confusing and misleading. With this criticism we do not agree.

The plaintiffs' petition and evidence show that they contended that the area in question, "alley number one," arose as a private way by virtue of the covenant in the deed above referred to and thereafter, by long use by the public and maintenance by the city, became a public alley by implied dedication. Thus, this excerpt explaining how a private way arises was proper.

This excerpt, quoted above, was not in conflict with another portion of the charge—"the issue in this case is simply this, has the alleged alley in question, being alley number one only, been dedicated by the defendants or their predecessors in title to the City of Wrightsville for public purposes?"—so as to confuse the jury as to the actual issue in the case. The former existence or non-existence of a private way at this particular location was a preliminary issue. The first excerpt refers to that preliminary issue. The latter excerpt refers to the final issue, whether the private way, if one did exist, became a public way. Therefore, rather than conflict, there is harmony between these two excerpts. The excerpt complained of was not confusing and misleading for any other reason assigned.

(b) Special ground 3 complains of a charge which substan-

tially recited the requirements for acquiring a private way, and urges the same basis of objection set forth in special ground 1. For the same reason stated in division 4 (a), immediately above, this ground has no merit.

(c) Special ground 2 complains that the excerpt, "the issue in this case is simply this, has the alleged alley in question, being alley No. 1 only, been dedicated by the defendants or their predecessors in title to the City of Wrightsville for public purposes?" was erroneous and injurious as not applicable to the issues made by the pleadings and evidence and also as constituting an expression of opinion as to what had been proved.

Since the object of the petition was to prohibit the closing of only the area designated as "alley number one," and since the defendants made no issue of right, title or ownership as to the areas labeled "alley number two" and "alley number three," this charge limiting the issue of dedication to the area specified as "alley number one" only was applicable and proper.

Furthermore, reference to this disputed area as "the alleged alley" and "alley number one" in no way expressed an opinion that it was a public alley. This is even more apparent by the court's instruction given near the end of the charge, "If after having heard all of the evidence in said case, both oral and documentary, and under the rules of law which I have given you in charge, if you determine that the plaintiffs in this case are entitled to recover—in other words if you determine that the disputed area had been dedicated to the City of Wrightsville as a public alley, then the form of your verdict would be 'We, the jury, find in favor of the plaintiffs.' "

(d) The fourth special ground of complaint relates to the following portion of the charge: "As stated, the petitioners contend that they acquired their original easement by virtue of a grant in a deed in 1912. In that connection I charge you that adverse possession of land under written evidence of title for seven years shall give a like title by prescription. But if such written title is forged or fraudulent and notice thereof is brought home to the claimant before or at the time of the commencement of his possession, no prescription shall be based thereon."

This charge is, in our view, subject to all three criticisms

made against it. It was a misstatement of the contentions of the parties, since the plaintiffs did not contend that they acquired their original easement by virtue of a grant in the 1912 deed. It was incorrect as a matter of law, confusing and misleading since elsewhere the court charged the jury that the issue in the case was whether "alley number one" had been dedicated by the defendants or their predecessors in title to the City of Wrightsville for public purposes, thus causing the jury to conclude that the issue was whether the covenant in the 1912 deed constituted a grant or dedication. This excerpt complained of was also incorrect as a matter of law in that the jury could have concluded therefrom that the 1912 deed constituted color of title under which seven years adverse possession would ripen into prescription, this being impossible because plaintiffs were not parties or privies to the deed and thus could not use it for color of title.

The jury may well have concluded that the 1912 deed constituted a grant and that, by virtue of it alone, this area became a public alley. This portion of the charge was not retracted or corrected elsewhere. We cannot say that this erroneous excerpt was not harmful to the defendants in view of the verdict in favor of the plaintiffs. Therefore, the giving of this portion of the charge was reversible error. The defendants' amended motion for new trial, one of the grounds of which complained of this portion of the charge, should, for this reason, have been granted.

(e) Special ground 5 complains of the following charge: "Now, under the allegations and contentions of the plaintiffs, the plaintiffs being the Mayor & Council of the City of Wrightsville, and others, and the allegations and the contentions of the defendants, being George East and Mrs. L. A. Lovett, the issue in this case is simply this . . . has the alleged alley in question, being alley number one only, been dedicated by the defendants or their predecessors in title to the City of Wrightsville for public purposes? The petitioners contend that said alley arose by virtue of an alleged grant for alley purposes in a deed executed in the year 1912 and that since [that time] there has arisen what is known as implied dedication to the City of

Wrightsville to said strip of land for alley purposes for the general public. I charge you that the plaintiffs, being the City of Wrightsville and others, can only recover based on one or more of their contentions set forth in their pleadings. . ." This excerpt was not erroneous. The reasoning given as to the portion of the charge complained of in division 4 (a) controls here also.

(f) Special ground 6 is that the court erred in charging the jury with reference to the consequences of an inadequate description in a deed. This charge was susceptible to the interpretation that the 1912 deed contained an inadequate description and therefore could not be relied upon by the plaintiffs as the origin of what they now contend is a public way. Therefore, this charge was more favorable to the defendants than to the plaintiffs and was not erroneous for any reason assigned.

(g) Special ground 7 involves the admission in evidence of the 1912 deed from Tanner to Lovett, with the provision against closing of the area now designated as "alley number one." The deed is contended to be irrelevant and immaterial. Also, it is urged as prejudicial in that it authorized the jury to conclude in plaintiffs' favor without evidence of closing by consent of the parties to such deed and for other stated reasons. Furthermore, it is urged that the deed's admission was confusing and misleading to the jury in that it became the basis for the court's charging the jury in enumerated particulars in relation to such deed, so as to convey to the jury that the deed constituted a grant or dedication of the alley for public purposes. The objections made to the admission of this deed must fail. It related to an issue which the plaintiffs had to carry, the location of the alley claimed to have been later dedicated, and was therefore relevant. The fact that the court erroneously charged with reference to it did not make the deed inadmissible.

■ ■ Having ruled upon the general and special grounds of the amended motion for new trial, we now consider the defendants' assignments of error made on that portion of the June 30, 1961, final judgment which decreed the area in question, "alley number one," to be a public alley, and also to that judgment in its entirety, as being contrary to law. This judgment followed

the erroneous charge to the jury, as embodied in special ground 4 of the defendants' motion for new trial, and is controlled by the ruling made in division 4 (d) of this opinion dealing with that special ground. Therefore, the judgment is subject to the attacks made upon it.

■ The judgment overruling the defendants' demurrers to the plaintiffs' amended petition and the judgment denying the defendants' motion for judgment notwithstanding the verdict are affirmed. The judgment denying the defendants' amended motion for new trial, for reasons set forth in division 4 (d) of this opinion, is reversed.

*Judgment affirmed in part, reversed in part. All the Justices concur.*