**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 25, 2021**

# In the Court of Appeals of Georgia

A21A0640. PULTE HOME COMPANY, LLC v. JUANITA M. AYCOCK LIVING TRUST.

A21A0641. COBB COUNTY v. JUANITA M. AYCOCK LIVING TRUST.

MCFADDEN, Chief Judge.

These related appeals concern whether Cobb County has partially abandoned a public use easement in a road that it obtained through an express dedication in a subdivision plat recorded in the 1960s. Finding a cognizable claim of abandonment under OCGA § 44-9-6, the trial court granted the Juanita M. Aycock Living Trust a temporary injunction to prevent Pulte Home Company, LLC from taking actions to develop an unpaved portion of that road pursuant to permits issued by the county. But as detailed below, the undisputed evidence shows that Cobb County still has an easement over the entire road, so it has a right to issue Pulte permits to perform work

on the unpaved portion of the road and Pulte has a right to perform work pursuant to those permits. We therefore reverse the temporary injunction in both appeals.

1. *Facts and procedural background.*

The relevant facts are undisputed. In 1962, the then-owner of the land at issue recorded a plat for the Holly Hills Estates subdivision. That plat contains an express dedication of the roads reflected therein to public use, stating: "I, Robert H. Simpson, owner of the property shown and described hereon adopt this plan for subdivision and dedicate the roads to public use." The recorded plat also contains notations reflecting the approval of the plat by various county entities.

One of the roads reflected in the recorded plat is Daffodil Drive. In 1964, Charles B. Aycock bought a house and lot in the subdivision abutting Daffodil Drive. He later conveyed the property to himself and Juanita M. Aycock as joint tenants, and the two later conveyed the property to themselves in their capacities as trustees of the Juanita M. Aycock Living Trust.

The portion of Daffodil Drive south of the Aycocks's property is paved and has been maintained and used as a public road. The remaining 70-foot portion of Daffodil Drive is unpaved and the county has not maintained or used it as a public road.

2

Instead, a portion of the Aycocks's driveway extends into this unused segment of road.

In 1964, the Aycocks asked the county to address an issue of regular flooding from drainage on Daffodil Drive that was damaging their driveway, and a representative of the Cobb County Commission inspected their property. Charles Aycock testified that the county representative acknowledged the problem but said to him: "I don't think the county will do anything about this, but why don't you just take your property and do whatever you want to with it, bring in dirt, fix up your driveway, and do whatever you want to." Referring to the unpaved portion of Daffodil Drive, the county representative told Charles Aycock, "they'll never build down below you because a man will be a damn fool to build on that property, it's so steep." These comments led Charles Aycock to believe that the county was not going to help them repair their driveway, and so the Aycocks engaged in landscaping, hardscaping, and maintenance on the unpaved portion of Daffodil Drive to address the problem.

Pulte currently owns two lots in an adjacent subdivision, and one of those lots abuts the Aycocks's property to the north. In 2019, Cobb County granted Pulte land disturbance and water line permits to improve the unpaved portion of Daffodil Drive

3

to access its lots. After the Aycocks unsuccessfully objected to those permits, they filed this action on behalf of the trust. Asserting that they have vested title in the unpaved portion of Daffodil Drive because Cobb County has abandoned its interest in that portion of the road, the Aycocks sought temporary and permanent injunctive relief to require the county to suspend the permits and to prevent Pulte from "trespassing on [their] property" or moving forward with the development of the road. They also alleged that the county's actions amounted to an unlawful taking of their property without due process of law, and they sought attorney fees.

After an evidentiary hearing, the trial court granted the trust a temporary injunction. Pertinently, the trial court held that the trust had a cognizable claim that the county had abandoned its interest in that section of road under OCGA § 44-9-6, which provides that "[a]n easement may be lost by abandonment or forfeited by nonuse if the abandonment or nonuse continues for a term sufficient to raise the presumption of release or abandonment[,]" and she held that, in her discretion, an interlocutory injunction was appropriate under the factors set forth in *SRB Investment Svcs. v. Branch Banking & Trust Co.*, 289 Ga. 1, 5 (3) (709 SE2d 267) (2011), which are set forth below.

4

Pulte and Cobb County filed these direct appeals, which are authorized under OCGA § 5-6-34 (a) (4) (permitting direct appeals from orders for interlocutory injunctions).

2. *Legal standards.*

"The purpose of an interlocutory injunction is to maintain the status quo pending a final adjudication on the merits of the case." *Holton v. Physician Oncology Svcs.*, 292 Ga. 864, 866 (2) (742 SE2d 702) (2013) (citation and punctuation omitted). The trial court has broad discretion to decide whether to issue an interlocutory injunction. *Holton*, 292 Ga. at 866 (2). In doing so,

> the trial court should consider whether: (1) there is a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted; (2) the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the moving party being enjoined; (3) there is a substantial likelihood that the party will prevail on the merits of her claims at trial; and (4) granting the interlocutory injunction will not disserve the public interest.

*SRB Investment Svcs.*, 289 Ga. at 5 (3) (citation omitted).

We will not reverse the trial court's decision on appeal "unless the trial court made an error of law that contributed to the decision, there was no evidence on an element essential to relief, or the court manifestly abused its discretion." *SRB*

5

*Investment Svcs.*, supra (citation and punctuation omitted). But where there is no meaningful conflict in the evidence, "the judge's discretion in granting or denying the interlocutory injunction is circumscribed by the applicable rules of law." *Morgan County v. Gay*, 352 Ga. App. 555, 572 (4) (834 SE2d 576) (2019) (citation omitted).

"A trial court's discretion to decide whether to grant an interlocutory injunction is abused, and may be reversed, when it is based on a misunderstanding or misapplication of the governing law," *Lue v. Eady*, 297 Ga. 321, 327 (2) (a) (773 SE2d 679) (2015), or where the law does not support recovery based on the evidence presented to the court. See *TMX Finance Holdings v. Drummond Financial Svcs.*, 300 Ga. 835, 837-839 (1), (2), (3) (797 SE2d 842) (2017). For example, we will reverse a grant of an interlocutory injunction where the trial court relied on an incorrect legal principle as the basis for the injunction. *Holton*, 292 Ga. at 870 (2). We will also reverse where there was undisputed evidence that the enjoined party had a legal right to act. *Oconee Fed. S&L Assn. v. Brown*, 349 Ga. App. 54, 60-61 (825 SE2d 456) (2019).

3. *Analysis.*

As detailed below, the trial court erred in granting the temporary injunction prohibiting Pulte from commencing work on the unpaved portion of Daffodil Drive,

because the undisputed evidence shows that Cobb County has a property interest in the unpaved portion of road that allows it to permit Pulte to perform that work.

(a) *Cobb County obtained an easement in Daffodil Drive through dedication.*

The undisputed evidence shows that Cobb County received rights to the public use of Daffodil Drive by dedication, the process by which "one may give a right to the public to use his land. . . . The two basic requirements of dedication of property to public use are, (1) an intention by the owner to dedicate the land to public use, and (2) an acceptance thereof by the public." *Jergens v. Stanley*, 247 Ga. 543, 544 (277 SE2d 651) (1981). Although the trust does not dispute that Cobb County accepted a dedication of Daffodil Drive for public use, for context we address below the evidence and authorities establishing that fact.

The requirement that the landowner intend to make the dedication has been met because the then-owner of the land expressly stated on the recorded subdivision plat that he "dedicate[d] the roads [shown on the plat] to public use," and the plat containing that language was recorded. See *Harbuck v. Houston County*, 284 Ga. 4, 6 (3) (662 SE2d 107) (2008); *Hobbs v. Ware County*, 247 Ga. 385 (1) (276 SE2d 575) (1981).

7

The requirement that the county accept the dedication of the roads in the recorded plat, including the entirety of Daffodil Drive, has been met because the county has used and maintained some of those roads, including a portion of Daffodil Drive. Where

> the extent of the grant is defined by the landowner himself in his statement making an express dedication to [the county], it is not necessary that the public authorities should work the entire street within the confines of the grant, to make effectual the act of acceptance. Any improvements or repairs done on the street by the public authorities in recognition of the dedication of a defined strip of land for a street may be regarded as an acceptance of the dedication. . . . Under this rule, since there has been an express dedication of the streets of the [Holly Hills Estates] subdivision by recording the subdivision plat, an acceptance of any part of the streets of the subdivision would be an implied acceptance of all of them.

*Hobbs*, 247 Ga. at 386 (2) (citation and punctuation omitted). Accord *Ketchum v. Whitfield County*, 270 Ga. 180, 182 (508 SE2d 639) (1998). "Here, the unpaved section of the right of way . . . is in fact the continuation of [Daffodil Drive], a street that was expressly dedicated and has been accepted by the county's acts of partially paving and maintaining the street." *Harbuck*, 284 Ga. at 7 (3).

8

There is, arguably, tension between the above-cited authorities and our Supreme Court's opinion in *Kelsoe v. Town of Oglethorpe*, 120 Ga. 951, 954 (48 SE 366) (1904), which held that if a "municipality assumed control over a portion only of a street thus laid out [by the then-owner of subdivided land], it will not be deemed to have accepted an easement over another portion of the street, as to which there has been no exercise of corporate authority." But in later decisions the Supreme Court discussed a distinction between cases in which

> acts of user [are] solely relied on to raise an implication of dedication, and [those in which, as here,] acts of user . . . evidenc[e] an acceptance of an express dedication. In the former case a dedication will not be implied beyond the use, while in the latter the dedicator has definitely fixed the limits of the land dedicated to public use, and proof of any acts by the public authorities, done in recognition of the offer of dedication, will be sufficient to imply an acceptance of the dedication.

*Hobbs*, 247 Ga. at 386 (2) (citations, punctuation, and emphasis omitted), quoting *Adams v. Richmond County*, 193 Ga. 42, 49 (3) (17 SE2d 184) (1941) (citations and punctuation omitted). And the Supreme Court held that this distinction is not inconsistent with the holding in *Kelsoe*. *Adams*, 193 Ga. at 49 (3). So although it is unclear from the *Kelsoe* decision whether the dedication in that case involved an express dedication contained in a recorded plat, as were the dedications in *Harbuck*

9

and *Hobbs* (and the dedication in this case), in light of this authority we decline to construe *Kelsoe* to preclude Cobb County from having accepted the entire express dedication of Daffodil Drive by its use of a portion of that road. See generally *White v. State*, 305 Ga. 111, 122 (3) (823 SE2d 794) (2019) (to the extent holdings in our Supreme Court cases are truly inconsistent, the more recent case must have tacitly overruled the earlier case).

The property interest Cobb County received through the dedication was an easement. A "dedication of property can consist of the dedication of either an estate in, or an easement across, the dedicated property[.]" *Wiggins v. Southern Bell Tel. & Tel. Co.*, 245 Ga. 526, 529 (1) (266 SE2d 148) (1980). Because the dedication in this case did not expressly grant Cobb County a fee-simple title, it conveyed to the county an easement in Daffodil Drive for public use. See *Northpark Assoc. No. 2 v. Homart Dev. Co.*, 262 Ga. 138, 141 (2) (414 SE2d 214) (1992) ("Where, as here, a road is established by dedication and there is no express grant of fee-simple title, an easement results.") (citation and punctuation omitted). So long as the easement is in effect, those persons or entities with legal title in Daffodil Drive hold those interests for uses "not inconsistent with the easement." *Wiggins*, 245 Ga. at 529 (1). But if Cobb County has abandoned its easement in the road, then the trust, as the abutting

10

landowner, is "presumed to own the fee to the middle of the road, free of the former rights of the general public." *Glass v. Carnes*, 260 Ga. 627, 632 (2) (398 SE2d 7) (1990).

(b) *Cobb County did not abandon its easement in Daffodil Drive.*

The trial court concluded that the trust had a "cognizable claim" that Cobb County had abandoned its easement in the unpaved portion of Daffodil Drive, and this conclusion was central to her determination that the factors supporting a temporary injunction, including the trust's substantial likelihood of prevailing on the merits, had been shown. But the undisputed facts of this case do not support a finding of abandonment.

As an initial matter, we note that "[p]rescription cannot run against the [s]tate or one of its subdivisions." *Hobbs*, 247 Ga. at 386 (2). This means that

> where a street or road has been dedicated to the public and accepted by the proper authorities of the county, no possession by a private individual of a part thereof can ripen into prescription. It follows that no character of possession, for no matter how long, of a portion of the dedicated strip which commenced after the time that the county manifested its acceptance of the dedication, could give [the trust] any right to interfere with the use thereof by the county for public purposes.

11

Id. (citation and punctuation omitted) (plaintiff not entitled to temporary injunction against work on portion of dedicated street that was being opened for public use 75 years after its dedication). See also *Ketchum*, 270 Ga. at 182 (property owners who had used for their own purposes the undeveloped portion of real property that had been expressly dedicated to and accepted by the county for public use could not obtain title to that undeveloped portion through prescription).

"Although the public easement for a street or road cannot be terminated by prescription, it can be lost by abandonment." Daniel F. Hinkel, Pindar's Georgia Real Estate Law and Procedure § 5:30 (7th ed. 2013). In 1973, our General Assembly enacted specific statutory procedures by which counties could abandon public roads. OCGA § 32-7-1 et seq. For purposes of that Code section, the term "public road" includes the unpaved portion of Daffodil Drive. See OCGA § 32-1-3 (24) (the term "public road" includes property "acquired as right of way"); OCGA § 32-1-3 (25) (the term "right of way" includes "property or any interest therein . . . which is acquired for . . . a public road"). There is no evidence suggesting that Cobb County followed those statutory procedures to abandon its easement in the unpaved portion of Daffodil Drive, and the trial court correctly held that the easement had not been abandoned under OCGA § 32-7-1 et seq.

12

Instead, the trial court found a cognizable claim that the county abandoned the portion of the easement under OCGA § 44-9-6. That Code section provides that "[a]n easement may be lost by abandonment or forfeited by nonuse if the abandonment or nonuse continues for a term sufficient to raise the presumption of release or abandonment." OCGA § 44-9-6. There is authority holding that Georgia law does not recognize the partial abandonment of express easements. See *Sorrow v. 380 Properties*, 354 Ga. App. 118, 121 (1) (840 SE2d 470) (2020); *Plantation Pipe Line Co. v. Milford*, 257 Ga. App. 709, 713 (2) (b) (572 SE2d 67) (2002). Neither the trial court nor the parties have addressed that authority, and in considering this argument we assume without deciding that it would be possible under OCGA § 44-9-6 for a county to abandon a portion of an expressly dedicated easement for public use of a road.

The county's nonuse of the unpaved portion of Daffodil Drive, alone, does not show that it abandoned its easement over that segment of road. "[T]he mere non-user of this portion of the street, which was within the definitely fixed limits of the express dedication, would not amount to an abandonment of it." *Young v. Sweetbriar, Inc.*, 222 Ga. 262, 268 (2) (149 SE2d 474) (1966). See also *Garner v. Young*, 214 Ga. 109, 110 (3) (103 SE2d 302) (1958) ("The mere non-use of a dedicated street is

13

insufficient to show abandonment."); *Pass v. Forestar Ga. Real Estate Group*, 337 Ga. App. 244, 246 (787 SE2d 250) (2016) ("mere nonuse does not work a forfeiture of the right to the use of a public road") (citations and punctuation omitted). Although the trial court and the trust have cited cases that they contend hold otherwise, those cases are distinguishable. See *Hames v. City of Marietta*, 212 Ga. 331 (1), (4) (92 SE2d 534) (1956) (city had not accepted implied dedication of portions of streets in question); *Mayor and Aldermen of Savannah v. Barnes*, 148 Ga. 317, 321 (96 SE 625) (1918) (where city did not build road upon property expressly dedicated for it, but upon adjacent property, it could not later assert property rights over a portion of the dedicated property); *Kelsoe*, 120 Ga. at 953 (municipality had not accepted dedication of portions of streets in question); *Strozzo v. Coffee Bluff Marina Property*, 250 Ga. App. 212, 214 (1) (a) (550 SE2d 122) (2001) (case did not involve mere nonuse, but rather governing authority's affirmative acts of blocking, for a period of years, public access to park land expressly dedicated to public use).

But even if a county could, through mere nonuse, abandon an easement in a road that had been expressly dedicated to public use, under OCGA § 44-9-6 "[n]o presumption of abandonment arises from mere nonuse for a time of less than 20 years, as a matter of law." *Duffy Street S. R. O. v. Mobley*, 266 Ga. 849 (1) (471 SE2d 507)

14

(1996). And before 20 years had elapsed, the General Assembly enacted OCGA § 32-7-1 et seq., which as discussed above imposes more specific requirements for abandonment of public roads that the trust does not argue were met. Beginning in 1973, those more specific provisions of OCGA § 32-7-1 et seq. governed over the more general provisions of OCGA § 44-9-6. See *Moosa Co. v. Dept. of Revenue*, 353 Ga. App. 429, 432 (838 SE2d 108) (2020) ("a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent in the relevant statutory text") (citation and punctuation omitted).

In circumstances where, as here, mere nonuse is not enough to show abandonment, there instead must be "a clear intent to abandon, decisive and unequivocal evidence of forfeiture, and[ ] the acts relied upon as evidence must be of a clear, unequivocal, and decisive character." *Sorrow*, 354 Ga. App. at 122 (2) (citing *Tietjen v. Meldrim*, 169 Ga. 678, 700 (151 SE 349) (1930)) (addressing express easement acquired by grant) (punctuation omitted). See generally *Northpark Assoc. No. 2*, 262 Ga. at 140 (1) n. 2 (noting, in case involving an easement in public roads established by dedication, the continued applicability of "the law dealing with abandonment of easements as articulated in *Tietjen v. Meldrim*[, supra]").

15

The evidence of the Aycocks's conversation with the county employee does not show that the county intended to abandon its easement. At the hearing on its motion, the trust told the trial court that it was not offering this evidence to prove any matter other than the Aycocks's reliance upon the statement. And in her order, the trial court held that the substance of that conversation was hearsay that was not subject to a hearsay exception. This means that the evidence can be used only to show that the conversation occurred and the Aycocks reacted to it. The evidence cannot be used for the truth of the things that the county employee said to the Aycocks, including any implication that the county was not going to use the road or that it was alright with the county if the Aycocks did work in the easement. See OCGA § 24-8-801 (c) (hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"); OCGA § 24-8-802 (generally, "[h]earsay shall not be admissible").

For these reasons, the trial court erred in finding that the trust had a cognizable claim that, under OCGA § 44-9-6, the county had abandoned the easement permitting it to use Daffodil Drive as a public road.

(c) *The temporary injunction was not warranted.*

16

The trial court's determination that the trust was entitled to a temporary injunction rested on her erroneous finding that the trust had a cognizable claim that the county had abandoned a portion of its easement in Daffodil Drive. But injunctive relief is an extraordinary remedy, *TMX Finance Holdings*, 300 Ga. at 837, and without evidence that the county had abandoned the easement, the trust cannot make a showing that supports the grant of a temporary injunction. Simply put, the county and Pulte (through the county's issuance of permits to it) have the right to take actions to open that portion of the road without interference from the trust, see *Hobbs*, 247 Ga. at 386 (2), and any interest the trust holds in the road is for uses "not inconsistent with the easement." *Wiggins*, 245 Ga. at 529 (1). Consequently, there is no likelihood that the trust will prevail upon the merits of its claim at trial, and so there is no threat that, without an interlocutory injunction, the trust will suffer an injury recognized under the law. For this reason, the trial court erred in granting the temporary injunction. See *Oconee Fed. S & L Assn.*, 349 Ga. App. at 60-61 (reversing grant of injunction where enjoined party had legal right to act).

*Judgments reversed. Barnes, P. J concurs. Rickman, P. J., concurs in the judgment only.*

17